**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 11-8056-PCT-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Danny Michael John, Jr., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Pending before the Court is Defendant's motion to dismiss the Superseding Indictment ("SI"). This Court went to trial on the original Indictment, and Defendant was found not guilty of counts 1-3. The jury hung on count 4. The SI recharges Defendant with the previous count 4 as count 3, and adds new counts 1 and 2.

This case involves allegations that Defendant sexually abused a minor. The abuse is alleged to have taken place on multiple occasions, over several years. The counts on which Defendant was acquitted were alleged to have occurred in Wheatfields. The new counts with which Defendant is charged are alleged to have occurred in Coalmine. It is undisputed that the jury heard testimony about the Coalmine incidents during the first trial. It is further undisputed that Defendant was not charged with the Coalmine incidents at the first trial.

The Government filed a memorandum (Doc. 135) explaining that because the new counts are a different act on a different date, there is no double jeopardy. The Government also filed a memorandum (Doc. 143) detailing that it is procedurally acceptable to bring a

1  superseding indictment post-trial. In his motion to dismiss, Defendant does not contest either
2  of these points. Instead, Defendant moves to dismiss on four grounds: 1) collateral estoppel;
3  2) pre-indictment delay, 3) fundamental fairness, and 4) prosecutorial vindictiveness.

**Collateral Estoppel**

Defendant argues that even when a new charge is not barred by a traditional double jeopardy analysis, the double jeopardy clause also contains a bar for charges that the jury necessarily acquitted Defendant of in the first trial. This bar is collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436 (1970).

In *Ashe*, Defendant had been charged with robbing one of six men who were playing poker. *Id.* at 438-39. Defendant was acquitted. *Id*. Defendant was then charged with robbing a different one of the poker players. *Id*. at 439-40. The Supreme Court said that because Ashe's identity as one of the robbers was the only contested issue in the first trial (at which he was acquitted), collateral estoppel barred the state from re-trying him with respect to the other poker players. *Id*. at 445.

Here, Defendant argues that because the Government's theory of the case was an on-going pattern of abuse by the Defendant, which included the Coalmine incidents, by acquitting Defendant, the jury necessarily acquitted Defendant of the entire pattern of abuse. The parties have not cited, and the Court has not located, a case where the Government argued a "pattern" of behavior, but charge only some acts within that pattern of behavior. However, based on *Custer v. Hill*, 378 F.3d 968, 973 (9th Cir 2003), the Court finds that each act is its own charge, and that a subsequent prosecution for acts not charged in the first prosecution does not run afoul of the collateral estoppel principles of *Ashe*. Specifically in *Custer* the Court found that Defendant's acquittal for one act of sodomy against his son did not bar a later prosecution for earlier acts of sodomy. *Id*. Admittedly, the defense is correct that *Custer* is distinguishable because in the first *Custer* prosecution, no evidence was presented, whereas here a "pattern" of abuse was testified to and argued. However, the concept that each incident is separate and an acquittal on one does not mean the jury necessarily reached a verdict on all the others is analogous. Therefore, Defendant's motion

to dismiss based on collateral estoppel will be denied.

**Pre-Indictment Delay**

Defendant bases his argument on the following:

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). To establish a Fifth Amendment violation, a defendant must prove (1) that he suffered "actual, non-speculative prejudice from the delay," and (2) that "the delay, when balanced against the prosecution's reasons for it, offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Id.* at 1353-54 (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)).

Doc. 150 at 12. The Government does not dispute this governing law.

The Ninth Circuit Court of Appeals has stated

The determination of whether a pre-indictment delay has violated due process is essentially decided under a balancing test, *Lovasco*, 431 U.S. at 790; *Mays*, 549 F.2d at 677, and we do not find that intent or reckless behavior by the government is an essential ingredient in the mix. If mere negligent conduct by the prosecutors is asserted, then obviously the delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged.

*United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985).

Here, the Government's claimed reason for the delay is that it did not know the exact dates and/or the victim's age at the time of the Coalmine incidents. However, as the Defendant points out, the Government's evidence and argument through out the first trial suggests that the Government in fact knew approximately when the Coalmine incidents occurred (Government alleged abuse for a two-and-a-half to three-year period, which would include the Coalmine incidents). Further, as the defense points out, the Government had letters and reports that included the approximate time of the Coalmine incident well before trial (*see* Exhibits to Defendant's Reply (Doc. 156) - 2009 documents). Finally, the defense notes that even if the Government could not piece its own evidence together, the Government could have asked the victim for the date. The Court agrees with the defense that the Government was at least negligent in failing to discover the date of this incident, and perhaps intentionally negligent by not asking a cooperating victim for the date of the incident or reading the victim's written statements to which the Government had access. Further, it is

even possible that the Government delayed to gain the tactical benefit of seeing all of Defendant's evidence against the alleged pattern of abuse in the first trial. However, other than the Court concluding that an objectively reasonable person looking at the evidence available to the Government could have determined the date of the Coalmine incident, the Court has no evidence of intentional delay for a tactical reason or other motive by the Government.

The Court must weigh the Government's conduct against the prejudice to the defense. Defendant argues he has been prejudiced in two ways. First, he claims that he would have been acquitted on the Coalmine charges had they been tried in the last trial. Second, he argues that the Government had the strategic benefit of testing all of his evidence at the first trial — which included testimony regarding the Coalmine incidents and the alleged pattern of abuse.

The Court of Appeals has stated that for a defendant to show actual prejudice caused by pre-indictment delay, "the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." *Id.* at 782. Here, the Court agrees with the defense that one could predict that if the Coalmine incidents had been part of the first trial, it is likely the Defendant would have been acquitted of those charges as well; however, that prediction is speculation. Further, it is possible that the Government seeing all of Defendant's evidence and trial strategy is a tactical benefit, but it is not actually prejudicial. Defendant has not lost any evidence or witnesses in the short time between the last trial and this next trial. Accordingly, the Court finds that the Defendant has not shown prejudice. Therefore, the motion to dismiss the indictment based on pre-indictment delay will be denied.

**Fundamental Fairness**

The Ninth Circuit has hypothesized that:

> The planned exposure of an accused to a succession of trials for offenses clearly subject to joinder [citation omitted] for the deliberate purpose of enhancing the chance of conviction on weak evidence, might well constitute fundamental unfairness, [citation omitted] and delays for such a purpose might well be unreasonable under both the Sixth Amendment and Rule 48(b), no

matter how short in duration.

*Sanchez v. United States*, 341 F.2d 225, 228 (9th Cir. 1965).

In *Sanchez*, Defendant was charged with a particular drug sale (July sale). *Id.* at 226. Defendant argued he was entrapped. *Id.* The Government introduced evidence of prior drug sales to show defendant was not entrapped. *Id.* Defendant was acquitted. *Id.* The Government then charge Defendant with one of the prior drug sales. *Id.* The Court held that this did not violate double jeopardy because the sales were clearly separate transactions. *Id* at 227.

The Court then went on to hold that this second indictment did not violate the principles of fundamental fairness because there was no evidence that,

> the failure to include the earlier transaction in the initial complaint and indictment was the consequence of a deliberate scheme to enhance the chances of conviction. A more reasonable inference would be that the omission was either without deliberation, or arose from the prosecutor's not unreasonable conclusion that the strength of the government's case with respect to the July offense made it unnecessary and unjustified to undertake the investigation and prosecution of the earlier offense; and that the determination to prosecute for the February offense was formed only after the court unexpectedly acquitted appellant of the July offense on his defense of entrapment.

*Id*. at 229.

Here, the facts are very similar to *Sanchez*. As the Court has already held above with respect to collateral estoppel, the Coalmine incidents and the Wheatfields incidents are separate incidents. Further, in both *Sanchez* and this case, evidence of the earlier incident came in at the trial of the later incident. Finally, the Government chose to prosecute only after an acquittal in both cases.

As the *Sanchez* court noted, the motive of the Government is the critical factor in determining whether the Sixth Amendment has been violated. And, as the Court has already held with respect to pre-indictment delay, the Court has no evidence of intentional delay by the Government. Accordingly, the Court finds this case indistinguishable from *Sanchez* and defendant's motion to dismiss based on fundamental fairness grounds will be denied.

**Prosecutorial Vindictiveness**

The Government violates a defendant's right to due process of law if the Government

- 5 -

files charges against the defendant to penalize the defendant for exercising a statutory or constitutional right. *U.S. v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). This penalizing, or prosecutorial vindictiveness, may be established by direct evidence of the prosecutor's punitive motive. *Id.* If there is no direct evidence of vindictiveness, the defendant is still entitled to a presumption of vindictiveness if the defendant can show that the charges, "were filed because [the defendant] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id.* (internal quotations and citations omitted). If the defendant establishes an appearance of vindictiveness, the burden then shifts to the government to rebut the presumption of vindictiveness. *Id.* at 701. The government can rebut this presumption with, "objective evidence justifying the prosecutor's action." *Id.* (internal quotations omitted).

In this case, the Court has no direct evidence of vindictiveness. *See e.g. United States v. Hollywood Motor Car Co., Inc.*, 646 F.2d 384, 388 (9th Cir. 1981) (vacated on other grounds 458 U.S. 263 (1982)) (finding actual vindictiveness when government threatened to bring additional charges if defendant moved to change venue). Thus, the Court must consider whether the circumstances give rise to an appearance of vindictiveness because Defendant exercised a constitutional right, in which case Defendant is entitled to a presumption of vindictiveness.

In considering the presumption of vindictiveness, the *Jenkins* court summarized the case as follows,

> The district court found that the prosecutor's conduct created the appearance of vindictive prosecution because the alien smuggling charges were brought only after Jenkins exercised her right to testify in her own defense at her separate marijuana smuggling trial. We affirm. We conclude that, because the government could have prosecuted Jenkins for alien smuggling well before she presented her theory of defense at the marijuana smuggling trial, the timing of the charges created the appearance of vindictiveness. The government's assertion that its case against Jenkins was much stronger after her in-court admission does not suffice to dispel the appearance of vindictiveness. We therefore conclude that the indictment should be dismissed.

*Jenkins*, 504 F.3d at 697.

Here, Defendant elected to go to trial. The Government argues that the new charges

1 were not in response to his exercise of this constitutional right, but rather in response to the
2 conduct of the jury. Doc. 152 at 17-18. The Court finds that going to trial is the exercise of
3 a constitutional right. What the Government seems to be arguing is that when Defendant
4 chose to go to trial, he did not receive a superseding indictment; therefore the Government's
5 actions are not in response to the exercise of this right. Instead, the Government seems to
6 argue it was the jury acquitting Defendant on some counts and hanging on another count that
7 caused the Government to supersede Defendant with additional charges. The possibility of
8 acquittal, it seems to the Court, is a component of the right to trial. Therefore, while the
9 Court understands the distinction the Government is attempting to draw, the Court finds it
10 unpersuasive. In other words, the right to trial would seem to be a hollow one if the
11 Government can freely retaliate against the Defendant if he wins. Thus, the Court finds
12 Defendant exercised a constitutional right.

13 Next, the Government argues that there is no presumption of vindictiveness because
14 the new charges do not arise from the same nucleus of facts as were previously charged.
15 Doc. 152 at 18. Because the Government's original theory of the case was an on going
16 pattern of abuse over a time frame that included the Coalmine incidents, the Court is not sure
17 the Government is correct that this is not the same nucleus of facts. The Court need not
18 determine whether the Coalmine incidents and the Wheatfields incidents are from the same
19 set of facts, however, because the Ninth Circuit has rejected the same nucleus of operative
20 facts test for raising a presumption of vindictiveness. *Jenkins*, 504 F.3d at 701 ("we do not
21 read *Martinez* as holding that a presumption of vindictiveness can *never* arise when the
22 second charge is unrelated to the first").

23 On this record, where Defendant exercised his right to trial, and the Government
24 brought a superseding indictment because he was acquitted on the three most serious charges
25 against him, the Court finds that Defendant has shown circumstances that have an appearance
26 of vindictiveness, which entitles Defendant to a presumption of vindictiveness. *See e.g.*
27 *United States v. Martinez*, 785 F.2d 663, 669 (1986) (when a prosecutor, "faced with a
28 disappointing result, acts so as to 'up the ante' for the defendant, the presumption of

1  vindictiveness arises and must be rebutted if the government is to prevail"). As a result, the
2  burden now shifts to the Government to rebut this presumption with objective evidence
3  justifying its actions.

4  The Government argues that originally the victim gave conflicting information about
5  her age at the time of the Coalmine incidents. Doc. 152 at 19. The Government argues that
6  during trial preparation for the first trial and after the first trial, the Government was able to
7  "more accurately identify the time frame" and bring the superseding indictment on counts
8  1 and 2. *Id.* As discussed above in the section on pre-indictment delay, the evidence in this
9  case suggests the Government had to ability to identify the approximate dates of the
10 Coalmine incidents from the evidence and witnesses available to the Government at any time
11 after 2009. The Court has no evidence that the Government actually reviewed this evidence
12 until immediately before the first trial, as the Government now alleges.

13 Thus, the question is whether the Government's failure to review its evidence until
14 after the Defendant is acquitted on the more serious counts against him can rebut a
15 presumption of vindictiveness. The Court finds it cannot. Instead, it would appear that the
16 Government undertook this new, detailed review of the evidence only because Defendant
17 exercised a constitutional right to his benefit. Therefore, the motion to dismiss the
18 superseding indictment will be granted, as to counts 1 and 2, for prosecutorial vindictiveness.
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

- 8 -

**Conclusion**

Based on the foregoing,

**IT IS ORDERED** that the motion to dismiss the superseding indictment (Doc. 150) is granted in part and denied in part. The motion is granted with respect to counts 1 and 2 of the superseding indictment and denied with respect to count 3.[1]

DATED this 21st day of May, 2012.

*James A. Teilborg*
United States District Judge

---

[1] The motion appears to seek dismissal of the entire superseding indictment. However, count 3 was originally count 4 of the indictment and has always been a charge Defendant was facing. The Court finds no evidence that the re-charging of this identical count following a hung-jury and resultant mistrial on this count was done for vindictive reasons.